**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| KEVIN JIMENEZ-CASTILLO, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:07-CR-0279-CAP-43 |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | CIVIL FILE NO. |
| | : | 1:10-CV-1444-CAP |

**ORDER**

Movant, Kevin Jimenez-Castillo, challenges the constitutionality of his convictions and sentences entered under the above criminal docket number. Before the Court are the 28 U.S.C. § 2255 motion (Doc. No. 1779), the government's answer-response (Doc. No. 1808), and Movant's supplement and traverse (Doc. Nos. 1822, 1823). For the reasons discussed below, Movant's § 2255 motion is due to be denied.

**I.   Background**

The Grand Jury, in a Third Superceding Indictment, charged Movant on, among other counts, (1) Count One, conspiracy to possess with intent to distribute at least five kilograms of a mixture containing cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846; and (2) Count Twenty, conspiracy to launder money, in violation of 18 U.S.C. § 1956. (Doc. No. 811 at 2-3, 12-14.) Movant, represented by

Christopher Taylor, entered into a plea agreement in which he pleaded guilty to Counts One and Twenty. (Doc. No. 1031, "Guilty Plea and Plea Agreement.") In the plea agreement, Movant stated that he understood that he was subject to a maximum term of life imprisonment, it would be within the Court's discretion to impose a sentence up to that maximum, and no one could predict his exact sentence at that time. (Id. ¶ 4.) Movant agreed that the elements of international money laundering, in Count Twenty, required the government to prove that Movant agreed to try and accomplish the knowing and willful international transport of funds with the intent to promote drug trafficking and that Movant did so willfully, knowing the unlawful purpose of the plan. (Id. ¶ 1.b.) Movant stipulated that he had been involved in maintaining drug-money stash houses and had, with others, delivered to drug organization members $3,746,980.00 in proceeds traceable to cocaine sales. (Id. ¶ 5 and Ex. A.) Movant stated that he agreed not to oppose (in application of the Sentencing Guidelines) that the "quantity of controlled substances attributable to [him] for sentencing purposes [was] more than 150 kilograms of . . . cocaine." (Id. ¶ 6.a.) The government agreed to dismiss Counts Two, Three, and Five of the Second Superseding Indictment, and Count Sixteen of the Third Superseding Indictment against Movant. (Id. ¶ 13.) The government further agreed that, in consideration of Movant's agreement to plead guilty

AO 72A
(Rev.8/82)

and his other agreements in the plea, it would not bring further criminal charges against him related to the charges to which he pleaded guilty. (Id. ¶ 14.) Movant voluntarily and expressly waived the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in a § 2255 motion. (Id. ¶ 16.) The parties agreed that if Movant failed to fulfill his obligations under the plea agreement, the government would be released from its commitments under the plea agreement and could then "prosecute [Movant] for any and all Federal crimes that he has committed related to this case, including any charges dismissed pursuant to this Plea Agreement" and that Movant waived "any statute of limitations defense and any constitutional or statutory speedy trial defense to such a prosecution, except to the extent that such a defense" existed when he signed the plea agreement.[1] (Id. ¶ 19.) Movant agreed that

---

[1] The Court notes that

> Defendants can obtain concessions in exchange for their promises in plea agreements only if those promises are credible. A defendant . . . who promises not to appeal, and then appeals anyway (requiring the United States to invest in the appeal the prosecutorial resources it sought to conserve), injures other defendants who plan to keep their promises, but can't distinguish themselves from those who sign with their fingers crossed behind their backs.
>
> . . . If the defendant does not keep his promises, the prosecutor is not bound either. This is established for broken agreements to cooperate. A defendant who . . . does not carry through, forfeits the benefits of the

the plea agreement was the complete agreement and there were "no other agreements, promises, representations, or understandings" between him and the government. (Id. ¶ 21). Movant further certified (1) that he had read and carefully reviewed the plea agreement with his attorney, understood it, and voluntarily agreed to it and (2) that no one had threatened him or forced him to plead guilty and that "no promises or inducements [had] been made to [him] other than those discussed in the Plea Agreement." (Id., Certification.)

At the plea hearing, the Court explained to Movant the trial rights that he was giving up by pleading guilty. (Doc. No. 1784 at 6-8.) The government stated, in open court, that Movant was subject to a maximum term of life imprisonment, that the Court could sentence him to the maximum sentence, and that the controlled substance amount attributable to Movant for sentencing purposes was more than 150 kilograms of cocaine. Movant agreed that the government had described the agreement in keeping with his understanding. (Id. at 9-10, 12.) The Court asked Movant whether anyone had promised him anything that was not written down that had caused him to

---

agreement, and the United States is free to reinstate dismissed charges and continue the prosecution.

United States v. Hare, 269 F.3d 859, 862-63 (7th Cir. 2001).

plead guilty, anyone had made a promise as to what his specific sentence would be, or anyone had threatened him in order to cause him to plead guilty. Each time, Movant responded, "No, Your Honor." (Id. at 13.) The Court asked Movant whether anyone had told him to tell the Court anything other than the truth, and Movant responded, "No, Your Honor." (Id.) In reviewing the facts in support of Count Twenty (pertaining to the international transport of funds, with the intent to promote drug trafficking) the government stated that a review of the drug ledgers showed that Movant had "delivered back to the upper levels of the organization for transportation back to Mexico over $3.7 million in cocaine proceeds, and this represents the sale of . . . at least 187 kilograms of cocaine." (Id. at 15-16.) Movant agreed that he participated in the Count Twenty conspiracy. (Id. at 17.) In regard to his sentencing exposure, the Court asked Movant if he understood that the Court could impose a life term of imprisonment, and Movant responded, "Yes, Your Honor." (Id. at 19.) The Court asked Movant if he understood that his sentencing guideline range could not be calculated until the probation office had done its investigation and that he would be bound by his plea agreement even "if the [sentencing] guideline calculation [was] different than what [he] and [his] lawyer ha[d] talked about." (Id. at 20.) Movant stated that he understood. (Id.) The Court then asked whether Movant understood that

5

he was giving up his rights to appeal and/or bring a collateral attack, and Movant responded, "Yes, Your Honor." (Id. at 20-21.) The Court accepted Movant's guilty plea to Counts One and Twenty.

The Court sentenced Movant to a 324-month term of imprisonment on Count One and a concurrent 240-month term of County Twenty, and all of the remaining counts against Movant were dismissed on the government's motion. (Doc. No. 1473.) Movant, represented by Darlene Calzon Barror, filed a direct appeal. (Doc. No. 1548.) Subsequently, Movant sought to voluntarily dismiss his appeal, and the Eleventh Circuit Court of Appeals granted that motion. (See Doc. No. 1640.)

Movant now raises five grounds for relief in his § 2255 motion, as supplemented: Ground One, based on ineffective assistance of counsel, his guilty plea was unknowing and involuntary; Ground Two, based on ineffective assistance of counsel, he was deprived of a direct appeal; Ground Three, the sentencing guidelines were not applied as promised by counsel and the government; and Ground Four, the charge in Count Twenty should not have been applied to Movant. (Doc. No. 1779, Form Motion at 5-6.) In his supplement, Movant (1) raises additional claims and argument in support of Grounds One and Two, (2) raises ineffective assistance of counsel claims in regard to the issues in Grounds Three and Four, and (3) adds Ground

6

Five, the sentencing court imposed an unreasonable sentence. (Doc. No. 1822 at 2-12.) The government asserts that Movant entered into an appeal waiver and otherwise contends that Movant's grounds fail. (Doc. No. 1808 at 2, 6-15.)

## II.  28 U.S.C. § 2255 Standard

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. A § 2255 motion, however, "may not be a surrogate for a direct appeal," and a defendant should "advance an available challenge to a criminal conviction or sentence on direct appeal." Lynn v. United States, 365 F.3d 1225, 1232, 1234 (11th Cir. 2004). "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted." United States v. Frady, 456 U.S. 152, 164 (1982). Section 2255, thus, is reserved for claims that allege "a lack of jurisdiction or constitutional error" or allege other "error of law" that constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979). Generally, however, a constitutional claim of ineffective assistance of counsel is properly raised on collateral review in order to

7

allow for adequate development of the facts pertinent to such a claim. <u>Massaro v. United States</u>, 538 U.S. 500, 505-09 (2003).

This Court will grant a hearing on a motion to vacate unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." <u>Fontaine v. United States</u>, 411 U.S. 213, 215 (1973) (quoting § 2255); <u>Downs-Morgan v. United States</u>, 765 F.2d 1534, 1536-37 (11th Cir. 1985). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the [Movant's] allegations are affirmatively contradicted by the record." <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Because, as indicated by the discussion below, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," <u>Fontaine</u>, 411 U.S. at 215 (quoting § 2255), an evidentiary hearing is not warranted.

### III. Discussion

#### A. Ground One

Movant contends that his plea was involuntary because (1) counsel misadvised him that he would receive a sentence of no more than 240 months; (2) counsel misadvised him that he would receive a decrease in his offense level and a downward

8

departure based on his minimal role in the offense; (3) counsel threatened him with the prospect of a life sentence if he went to trial; (4) counsel advised him that he should "just agree" with the court's questions at the plea hearing; (5) based on counsel's explanation, he thought that the 5 kilograms of cocaine in the plea agreement was the amount "he would be taking responsibility for" and counsel should have explained he could be held accountable for 150 kilograms; and (6) counsel wrongly advised him to plead guilty to Count Twenty, when the government had no evidence to support the charge in County Twenty.[2] (Doc. No. 1779 at 2, 5; Doc. No. 1822 at 2-4, 9-10.) Movant contends, that, but for counsel's misadvice and threats, he would not have pleaded guilty. (Doc. No. 1779 at 2, 5.)

An appeal waiver, such as entered into by Movant, does not preclude a defendant from filing a § 2255 motion to challenge counsel's effectiveness in regard to the validity of a plea and/or an appeal waiver. Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005); Cowart v. United States, 139 F. App'x 206, 208 (11th Cir. 2005). A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To

---

[2] The Court includes in Ground One Movant's assertions, found elsewhere in his § 2255 Motion and supplement, that pertain to counsel's actions that allegedly rendered his guilty plea involuntary.

9

show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. Id. at 690-92. The Court may resolve an ineffective-assistance-of-counsel claim based on either of the above prongs. Atkins v. Singletary, 965 F.2d 952, 958-59 (11th Cir. 1992).

Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice. Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000).

The Supreme Court has stated that:

[The] representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory

10

allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a petitioner must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for unprofessional counsel's errors," "he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985). A petitioner's bare allegation that he "would not have pleaded guilty" but for his counsel's misadvice is insufficient to establish prejudice. United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985), abrogated on other grounds, Padilla v. Kentucky, _ U.S. _, 130 S. Ct. at 1481 n.9, 1483-84 (2010).

Movant's claim – that counsel promised him he would receive a sentence of no more than 240 months if he pleaded guilty – is contradicted by the record and Movant's own representations to the Court. (See Doc. No. 1031, "Guilty Plea and Plea Agreement" ¶ 4 and Certification; Doc. No. 1784 at 13, discussed supra in I. Background.) Movant's claim – that counsel advised him that he should "just agree" with the court's questions at the plea hearing – is contradicted by Movant's

11

representation to the Court no one had told him to tell the Court anything other than the truth. (See Doc. No. 1784 at 13, discussed supra in I. Background.) Movant's claim – that based on counsel's explanation, he thought that the 5 kilograms of cocaine in the plea agreement was the amount he would be taking responsibility for – also is contradicted by the record. (See Doc. No. 1031, "Guilty Plea and Plea Agreement" ¶ 6.a. and Certification; Doc. No. 1784 at 10, 12, discussed supra in I. Background.) The Court does not credit these claims. Further, the claim that counsel wrongly advised Movant to plead guilty to Count Twenty is unsupported by the record in that Movant stipulated to facts that the Court found supported his plea to Count Twenty. (See Doc. No. 1031, "Guilty Plea and Plea Agreement" ¶¶ 1.b, 5 and Ex. A; Doc. No. 1784 at 15-17, 19, discussed supra in I. Background.) Movant fails to show deficient performance by counsel on the above matters.

Further, Movant cannot show prejudice. Even if counsel told Movant he faced the prospect of a life sentence by going to trial, such advice was non-prejudicial because Movant knew he was subject to a life term of imprisonment, whether he pleaded guilty or went to trial, and that it was within the Court's discretion to impose a life sentence based on his guilty plea. (See Doc. No. 1031, "Guilty Plea and Plea Agreement" ¶ 4; Doc. No. 1784 at 9-10, 12, 19, discussed supra in I. Background.)

12

Even if counsel misadvised him that he would receive a decrease in his offense level and a downward departure based on his minimal role in the offense, such advice was non-prejudicial when Movant told the Court that understood that the guideline calculation could be different than what he and his counsel talked about and that he would remain bound by his guilty plea even if it was different. (See Doc. No. 1784 at 20, discussed supra in I. Background.) Further, Movant's conclusory assertion – that he would not have pleaded guilty but for counsel's alleged misadvice and threat of a life sentence – is insufficient to meet his burden of showing that it was reasonably probable that he would have gone to trial, but for counsel's alleged deficiency. By pleading guilty to Counts One and Twenty, Movant, among other things, obtained from the government the agreement that it dismiss four other counts. That significant concession by the government weighs against Movant's bare allegation that if he had received different advice he would have changed his decision to plead guilty.

### B. Ground Two

Movant argues that he was deprived of his right to a direct appeal because his counsel, apparently Mr. Taylor, failed to file an appeal as directed. (Doc. No. 1779 at 3-4.) Movant also states that Ms. Barror, who filed an appeal, told him that if he engaged in a direct appeal, "the government would bring additional witnesses and file

13

additional charges against [him]" and he signed the withdrawal of his appeal because he was relying on her legal advice. (Doc. No. 1822 at 5.) Movant contends, however, that the government's promise in the plea agreement – that it would not bring further criminal charges against him related to the charges to which he pleaded guilty – shows that Ms. Barror lied to him and "severely prejudiced" him by depriving him of "an opportunity to refute his sentence." (Id. at 5-6.)

Any claim regarding Mr. Taylor's failure to file an appeal fails because it is apparent that Movant can show no prejudice when he filed a direct appeal with the assistance of Ms. Barror. Further, Movant has not shown that Ms. Barror's advice to withdraw the appeal was deficient. Although the government agreed it would not bring further criminal charges, that agreement hinged on Movant honoring his agreements, which included the agreement not to challenge his sentence on direct appeal. (See Doc. No. 1031, "Guilty Plea and Plea Agreement" ¶¶ 14, 16.) Ms. Barror's advice that, as alleged by Movant, deprived him of the opportunity to "refute his sentence" (Doc. No. 1822 at 6) was not deficient because, had Movant challenged his sentence on direct appeal, he would have been in breach of his plea agreement, and the government would have been released from its obligations under the plea agreement, as suggested by Ms. Barror. (See Doc. No. 1031, "Guilty Plea and Plea

14

Agreement" ¶ 19.) Further, to the extent that Movant could have challenged the validity of his plea agreement on direct appeal without risking a breach of his plea agreement, he fails to show prejudice based on Ms. Barror's advice to withdraw his direct appeal. As discussed above, Movant fails to show that his guilty plea was involuntary based on ineffective assistance of counsel. Further, he fails to show what arguments, other than ineffective assistance of counsel, he would have presented on direct appeal to show that his plea was involuntary. Accordingly, this ground fails.

### C. <u>Ground Three</u>

Movant asserts that his sentencing offense level should have been decreased based on his minimal participation and he should have received a downward departure based on his minimal role in the offense. (Doc. No. 1779 at 5.) Movant also argues that counsel was ineffective for failing to argue at sentencing for a minimal role sentencing adjustment. (Doc. No. 1822 at 6-9.) Movant entered into a voluntary plea waiver in which he waived the right to attack his sentence in a § 2255 proceeding. Further, "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel

15

during sentencing." Williams, 396 F.3d at 1342. Movant's claims in Ground Three are precluded by his appeal waiver, and Ground Three fails.

### D. Ground Four

Movant argues, with little explanation, that the charges in Count Twenty (conspiracy to launder money, in violation of 18 U.S.C. § 1956(h)), should not have applied to him. (Doc. No. 1779 at 6.)[3] As discussed above, Movant's Ground One challenge to his guilty plea (and appeal waiver) fails, there is a valid appeal waiver in this case, and Movant's Ground Four is barred.

### E. Ground Five

Movant asserts that the sentencing court imposed a sentence that is unreasonable under the factors in 18 U.S.C. § 3553(a). (Doc. No. 1822 at 10-12.) Movant asserts that his failure to raise this issue on direct appeal should be excused because the failure was based on ineffective assistance of appellate counsel. (Id. at 10-11.) Even if the Court excused Movant for failing to raise this matter on direct appeal, it is otherwise

---

[3] In his amended Ground Four, Movant argues that counsel was ineffective in advising him to plead guilty to Count Twenty when the government, during pre-trial proceedings, failed to offer evidence to support a conviction under Count Twenty. (Doc. No. 1822 at 9-10.) This claim is construed as a claim that his guilty plea was involuntary, and is addressed in Ground One, above. Otherwise, this claim is barred by the appeal waiver.

16

barred from review. As stated above, Movant entered into a valid appeal waiver, and he cannot challenge his sentence or conviction in this collateral proceeding.

## IV. Certificate of Appealability (COA)

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) of Title 28 states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v . McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotations omitted). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason

17

would find it debatable whether the district court was correct in its procedural ruling." Jimenez v. Quarterman, 555 U.S. 113, _, 129 S. Ct. 681, 684 n.3 (2009) (quotations omitted, citing Slack, 529 U.S. at 484).

Based on the discussion above, the Court determines that a COA is unwarranted. Because this court "has denied the certificate, the applicant may request a circuit judge to issue it." Fed. R. App. P. 22(b)(1).

## V. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Movant's motion (Doc. No. 1779) to vacate, set aside, or correct his federal sentence is **DENIED**.

**IT IS FURTHER ORDERED** that a COA is **DENIED**.

**IT IS SO ORDERED**, this 1st day of February, 2011.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
UNITED STATES DISTRICT JUDGE